# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION (COLUMBUS)

| | | |
|---|---|---|
| RODNEY K.,[1] | : | Case No. 2:23-cv-00653 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in July 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

**I.    BACKGROUND**

Plaintiff asserts that he has been under a disability since January 1, 2020. At that time, he was thirty-nine years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 41-69), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

**II.    STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.  FACTS

### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date.

Step 2: He has the following severe impairments: right shoulder tendon tears, tendinopathies, superior labrum anterior to posterior (SLAP) tear, and moderate acromioclavicular (AC) joint osteoarthritis; degenerative changes of the right knee; spinal stenosis and foraminal stenosis; spinal cord compression of the cervical spine; full-thickness rotator cuff tear; status post anterior cervical

|  |  |
|---|---|
|  | decompression and fusion C4-7; cervical radiculopathy; insomnia disorder; obesity; lumbar radiculopathy; multilevel degenerative changes of the lumbar spine with moderate central stenosis; right carpal tunnel syndrome; status-post right shoulder arthroscopy; status-post laminectomy; bilateral mild to moderate osteoarthritis of the bilateral knees; major depressive disorder; and generalized anxiety disorder. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "lifting and/or carrying 10 pounds occasionally, and less than 10 pounds frequently; sitting for up to a total of six hours in an eight-hour work day, but must have the option to alternate to a standing position for [three] minutes after every [thirty] minutes of sitting; standing and/or walking for up to a combined total of two hours out of an eight-hour workday, however, he must have the option to alternate to a seated position for five minutes after every [thirty] minutes of standing and/or walking (in changing positions, it is optional, and he would not be off-task or away from the workstation); bilateral frequent operat[ion of] foot controls and bilateral frequent hand controls; bilateral frequent reaching overhead, reaching all other directions, handling, fingering, and feeling; occasional [climbing of] ramps and stairs; never [climb] ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, [and] crouch; never crawl; occasional [work at] unprotected heights; never [work around] moving mechanical parts; occasional [exposure to] extreme cold; occasional [exposure to] vibration; simple, routine tasks; simple, work-related decisions; frequent interactions with supervisors and coworkers; and occasional interaction with the public." |
|  | He is unable to perform any of his past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. |

5

(Decision, Doc. No. 7-2 at PageID 46-62.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 62-63.)

### B. The ALJ's Symptom Severity Analysis

The ALJ summarized the evidence regarding Plaintiff's symptoms, subjective complaints, and reported daily activities. (Decision, Doc. No. 7-2 at PageID 50-57.) The ALJ concluded that although Plaintiff's physical and mental impairments could reasonably be expected to cause some of his symptoms, his statements about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 51.)

With respect to Plaintiff's physical limitations, the ALJ acknowledged that he "certainly had some physical issues, which resulted in the need for about three surgeries within a less than 12-month period." (Decision, Doc. No. 7-2 at PageID 55-57.) The ALJ found that although some objective examination findings supported his complaints, other findings did not support them. The ALJ concluded that Plaintiff's physical complaints were not entirely consistent with the evidence in the record because some impairments had improved, he was able to start dating online, and he "was able to climb a ladder into a dumpster, even though he hurt his knee while doing so." (*Id*.) The ALJ explained: "If [Plaintiff] were as limited as he has alleged, I would not expect to see evidence showing he thought he was able to climb into a dumpster." (*Id*.) The ALJ also cited to "generally conservative" treatment and a lack of evidence that Plaintiff completed the recommended physical therapy and rehabilitation. (*Id*.)

Next, the ALJ concluded that Plaintiff's subjective complaints about his mental impairments were not entirely consistent with the evidence in the record. (Decision, Doc. No. 7-2 at PageID 57.) Specifically, the ALJ explained that Plaintiff was "treated with psychotropic medication with adjustments as needed with no evidence of deterioration or psychiatric hospitalizations during the relevant period." (*Id.*)

The ALJ also explained her decision to include certain restrictions in the RFC. (Decision, Doc. No. 7-2 at PageID 57.) The ALJ limited Plaintiff to sedentary exertion with additional postural, manipulative, and hazard limitations because of musculoskeletal and neurological impairments, as well as obesity. (*Id.*) The ALJ limited Plaintiff to frequent handling, feeling, and fingering because of carpal tunnel syndrome. (*Id.*) The ALJ limited Plaintiff to no more than frequent reaching in all directions because of his history of cervical spine and right shoulder surgery. (*Id.*) The ALJ imposed task-related and social limitations based upon the "cumulative effects of the pain, fatigue, effects of treatment, and residual functioning related to physical impairments, in addition to the symptoms and effects of treatment related to [Plaintiff's] mental impairments." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ "improperly rejected Plaintiff's statements about the severity, persistence, and limiting effects of his symptoms based on material mistruths and mischaracterizations of the record." (SE, Doc. No. 9 at PageID 1486.) For the reasons discussed below, Plaintiff's assertion is well-taken and the ALJ's decision shall be reversed and remanded.

A.  **Applicable Law**

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[3]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8.  The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

8

the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

9

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

  The ALJ will also consider whether the individual sought medical treatment and followed the treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. Similarly, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

  However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *9. The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to

10

ascertain the reason(s) for the lack of treatment. *Id.* at *9. The ALJ "*will* explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added); *cf. Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) (the ALJ must consider the reasons for not obtaining treatment "before drawing an adverse inference from the claimant's lack of medical treatment.").

> **B.  The ALJ Reversibly Erred When Evaluating Plaintiff's Symptom Severity.**

The ALJ erred when analyzing Plaintiff's symptom severity in several respects, as explained below. Because the ALJ's conclusions are unsupported by substantial evidence and she did not comply with the requirements of SSR 16-3p, reversal is required.

> **1.  The ALJ's conclusion that Plaintiff's treatment was "generally conservative" is unsupported by substantial evidence.**

The ALJ inexplicably concluded that Plaintiff underwent "generally conservative" treatment for his physical impairments:

> I note that while the record shows [Plaintiff] experiences symptoms from his conditions, treatment plans during the relevant period were ***generally conservative in nature, involving*** outpatient office visits for medication management, imaging, follow up, pain management, and ***three surgeries*** during the relevant period. [Plaintiff] underwent anterior cervical decompression and fusion C4-C7 in August 2020; right shoulder arthroscopy subacromial decompression rotator cuff repair on December 2, 2020; and lumbar laminectomy L3-S1 in July 2021 (2F/19, 28; 4F/9; 6F/124, 132-135, 193; 10F/56, 75, 91-92).

(Decision, Doc. No. 7-2 at PageID 56 (emphasis added).) Without an explanation that addresses the nature of the surgeries, it is unreasonable to conclude that three surgeries during a one-year period constitutes "generally conservative" treatment. *E.g., Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 U.S. Dist. LEXIS 56355, *46 (E.D. Mich. Apr.

11

28, 2016) (finding "hollow and false" an ALJ's conclusion that surgical spinal repair was "essentially routine and conservative in nature"). Because the ALJ's summary conclusion is not supported by substantial evidence, reversal is required.

### 2. The ALJ's reliance upon Plaintiff's decision to climb into a dumpster is unsupported by substantial evidence.

The ALJ discounted Plaintiff's symptom severity, in part, because of "evidence from February 2022 showing [Plaintiff] was able to climb a ladder into a dumpster, even though he hurt his knee while doing so (14F/11)." (Decision, Doc. No. 7-2 at PageID 55.) The ALJ concluded: "If [Plaintiff] were as limited as he has alleged, I would not expect to see evidence showing he thought he was able to climb into a dumpster." (*Id.*)

However, the "evidence from February 2022" that the ALJ cited is a record of Plaintiff's statement that he climbed a ladder into a dumpster (and injured his knee) ***when he was nineteen years old***, approximately twenty years prior to the alleged disability onset date. (AR, Doc. No. 7-9 at PageID 1455; *see* AR, Doc. No. 7-5 at PageID 362 (date of birth).) The ALJ plainly erred by discounting Plaintiff's symptom severity based on evidence "showing that he thought he was able to climb into a dumpster" nearly twenty years before he claimed to be disabled.

Defendant contends that the ALJ's error regarding Plaintiff's reported ability to climb into a dumpster was harmless because "Plaintiff has not shown that this misstatement would have altered the ALJ's decision." (Mem. In Opp., Doc. No. 11 at PageID 1511 (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).) The Court disagrees. The ALJ in *Ulman* made only one factual error when discounting

12

plaintiff's complaints, and the Sixth Circuit held that it was harmless because the ALJ otherwise "cited substantial, legitimate evidence to support his factual conclusions." *Ulman*, 693 F.3d at 714. Here, by contrast, the ALJ cited to no substantial evidence to support her conclusions. Therefore, the error is not harmless and reversal is required.

### 3. The ALJ's conclusions regarding Plaintiff's daily activities, including online dating, are unsupported by substantial evidence.

The ALJ also erred when analyzing Plaintiff's daily activities. SSR 16-3p requires an ALJ to consider a claimant's daily activities when evaluating the severity of his symptoms. SSR 16-3p at *7. The ALJ's analysis of such activities must "be consistent with and supported by the evidence." *Id*. at *10. Similarly, the Sixth Circuit recognizes that an ALJ "may consider a claimant's household and social activities in evaluating complaints of daily pain." *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, the ALJ "may not take part of [Plaintiff's] testimony and disregard the rest." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003).

Here, the ALJ also discounted Plaintiff's subjective physical complaints because of his "ability to start to date online." (Decision, Doc. No. 7-2 at PageID 55 (citing AR, Doc. No. 7-9 at PageID 1433).) However, this Court agrees with Plaintiff that his ability to date online has no apparent relevance to the severity or consistency of his ***physical*** complaints. (*See* SE, Doc. No. 9 at PageID 1496.)

It is also notable that the ALJ did not cite any additional examples of Plaintiff's reported daily activities to support her conclusion that Plaintiff's physical complaints were not consistent with other evidence in the record. (Decision, Doc. No. 7-2 at PageID

13

55-57.) The ALJ did acknowledge Plaintiff's reported daily activities and limitations in her summary of his subjective complaints. (Decision, Doc. No. 7-2 at PageID 51.) But the ALJ only considered Plaintiff's statement regarding online dating when evaluating the consistency of his physical complaints with other evidence in the record. (*Id.* at PageID 55.) The ALJ ignored, for example, Plaintiff's statements that he was unable to prepare meals for himself and needed assistance with activities of personal care. (*Id.* at PageID 51 (citing AR, Doc. No. 7-6 at PageID 432-33, 440-41).) The ALJ also ignored Plaintiff's testimony that he spent much of the day lying down and watching television, due to his pain. (AR, Doc. No. 7-2 at PageID 85.)

      The ALJ's failure to acknowledge significant evidence that supports Plaintiff's subjective complaints, combined with her mischaracterization of the evidence she chose to cite, signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). The Court recognizes that the ALJ is not required to directly address every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that [she] implicitly resolved" any conflicts in the evidence. *Id.* Here, because the ALJ impermissibly (and incorrectly) cherry-picked the record, reversal is required.

### 4. The ALJ did not comply with SSR 16-3p.

The ALJ discounted Plaintiff's subjective complaints because of his alleged failure to comply with "recommended physical therapy and rehabilitation after the surgeries" (Decision, Doc. No. 7-2 at PageID 56), but did not consider or develop the record regarding possible reasons for Plaintiff's noncompliance. The ALJ's failure to comply with SSR 16-3p is another error that requires reversal.

As an initial matter, the Court must ascertain the evidence on which the ALJ relied to conclude that Plaintiff did not comply with treatment recommendations. The ALJ cited no records to support her conclusion, and identified no such noncompliance in her summary of the medical evidence. (Decision, Doc. No. 7-2 at PageID 52-56.) However, the medical records do indicate that Plaintiff failed to start physical therapy after his August 2020 cervical spine surgery. (*See* AR, Doc. No. 7-7 at PageID 564, 570). The Court will presume that the ALJ relied on these records, which relate solely to the August 2020 cervical spine surgery, to discount Plaintiff's subjective symptoms.

The ALJ did not, however, consider *why* Plaintiff did not undergo physical therapy after his August 2020 surgery. The ALJ was required to "consider[] possible reasons [Plaintiff] may not comply with treatment" before relying on a lack of treatment to conclude that his symptoms were inconsistent with the evidence in the record. SSR 16-3p, 2017 WL 5180304, *9-10. Here, Plaintiff's surgeon noted in November 2020 that Plaintiff had not started physical therapy "due to transportation issues." (AR, Doc. No. 7-9 at PageID 1216.) The ALJ wrongly ignored this explanation when she concluded that

15

"minimal evidence" of follow-up with physical therapy was inconsistent with Plaintiff's alleged symptom severity. (Decision, Doc. No. 7-2 at PageID 56.)

Nor did the ALJ develop the record regarding possible reasons for Plaintiff's noncompliance, as SSR 16-3p required her to do. During the hearing, for example, the ALJ did not ask any follow-up questions about whether or why he had not followed up with treatment recommendations. (*See* AR, Doc. No. 7-2 at PageID 94-98.)

Accordingly, the ALJ failed to comply with SSR 16-3p, and reversal is required.

## VI. THE ALJ'S ERRORS WERE NOT HARMLESS

The ALJ's errors can only be excused as harmless if they do not prejudice the claimant on the merits or deprive him of substantial rights. *Rabbers*, 582 F.3d at 654. The Court finds that the ALJ's errors were not harmless because they prejudiced Plaintiff on the merits. Therefore, reversal is required.

## VII. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's subjective complaints and treatment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge